# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | Case Number 4:23-cr-136 |
| § | Judge Mazzant |
| OLABODE THOMAS AJIBOLA (2) § | |
| DUMBOR JOSEPHINE BARIBE (11) § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Dumbor Josephine Baribe's Motion for Acquittal (Rule 29 F.R.C.P.) (Dkt. #604). Also pending before the Court is Defendant Olabode Thomas Ajibola's Motion for Acquittal (Rule 29 F.R.C.P.) (Dkt. #627). Having considered the Motions, the relevant pleadings, and the applicable law, the Court concludes as follows:

1. Defendant Dumbor Josephine Baribe's Motion for Acquittal (Rule 29 F.R.C.P.) (Dkt. #604) should be **DENIED**; and
2. Defendant Olabode Thomas Ajibola's Motion for Acquittal (Rule 29 F.R.C.P.) (Dkt. #627) should be **DENIED**.

## BACKGROUND

This case involves a conspiracy to defraud the United States Government. The First Superseding Indictment (the "Indictment") charged Defendant Ajibola and Defendant Baribe (collectively, "Defendants") with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 (Count One) and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count Two). Defendants were alleged to have conspired to engage in a scheme to defraud the United States through the Paycheck Protection Program ("PPP") and the Economic Injury Disaster Loan Program ("EIDL"). Broadly, the Indictment asserted that

Defendant Bello, the (now convicted) ringleader of the conspiracy, pulled Ajibola and Baribe into a plan to submit fraudulent applications for PPP or EIDL loans (Dkt. #376 at p. 7). They, along with several other co-defendants who pleaded guilty, were successful in that endeavor. After Defendants obtained the ill-gotten funds, Defendants did not use them for permitted purposes under the PPP or EIDL program (Dkt. #376 at p. 7). Instead, the Government alleged that Defendants paid Bello a kickback, transferred the money from their business accounts to their personal accounts, and spent lavishly on personal items (Dkt. #376 at pp. 7–8). The case proceeded to a jury trial on January 13, 2025. Three days later, a jury found each Defendant guilty on both Counts (Dkt. #541).

On March 6, 2025, Defendant Baribe filed her Motion for Acquittal (Dkt. #604). Defendant Ajibola filed his Motion for Acquittal the same day (Dkt. #627). The Government responded to both Motions jointly on March 31, 2025 (Dkt. #631). The Court now takes up the matter.[1]

## LEGAL STANDARD

A Rule 29 motion for judgment of acquittal "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). The issue is "whether, viewing the evidence in the light most favorable to the verdict, a rational [finder of fact] could have found the essential elements of the offense charged beyond a reasonable doubt." *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009)). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt

---

[1] Because neither Defendant ordered a transcript, the Court relies on its recollection of the evidence presented at trial, citing occasionally to the factual allegations raised in the Government's Response (Dkt. #631). Needless to say, though the Court may cite to the factual assertions raised by the Government, the Court does not rely upon the Government's recollection of the trial record; the Court only cites it to anchor the Government's position.

beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The factfinder is "free to choose among reasonable constructions of the evidence," and "it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations and citations omitted).

## ANALYSIS

Through their separate Motions, Defendants seek a judgment of acquittal "on both counts and on each and every element of the counts" (Dkt. #604 at p. 1; Dkt. #627 at p. 1). The Court will proceed to test the sufficiency of the evidence upon which the jury convicted each Defendant in order, beginning with Count 1, conspiracy to commit wire fraud.

### I.  Conspiracy to Commit Wire Fraud

To establish conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, the Government had to prove the following elements beyond a reasonable doubt: (1) that the defendant and at least one other person made an agreement to commit the crime of wire fraud; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the specific intent to further its unlawful purpose. *United States v. Kuhrt*, 788 F.3d 403, 414 (5th Cir. 2015); *United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020).

"Criminal conspiracy can be established on circumstantial evidence alone." *Sanders*, 952 F.3d at 273. "Indeed, a jury can infer from the surrounding circumstances whether a defendant participated in and knew of the conspiracy." *Id.* "'What people do is . . . evidence of what lies in their mind.'" *Id.* (quoting *United States v. Ganji*, 880 F.3d 760, 768 (5th Cir. 2018)).

Baribe and Ajibola claim that there was "no evidence" to satisfy any element of a violation under 18 U.S.C. § 1349 (Dkt. #604 at p. 3; Dkt. #627 at p. 3). Both Defendants claim that they "only worked" with Bello, a "master manipulator of people" who "took advantage" of them (Dkt.

3

#604 at p. 3; Dkt. #627 at p. 3). Both Defendants also argue specifically that the evidence was insufficient to show that they had the requisite intent to defraud such that their convictions may stand (Dkt. #604 at p. 3; Dkt. #627 at p. 3). According to Baribe, the evidence adduced at trial showed that she owned a catering company with paid employees and spent money in furtherance of that business (Dkt. #604 at p. 3). Baribe argues that, at trial, her daughters testified that she trusted Bello when he offered to assist her obtain a PPP loan (Dkt. #604 at p. 3). All the evidence, according to Baribe, suggests that Bello created and submitted fraudulent PPP loan applications bearing her company's name, from his IP address, at his house, all without her knowledge (Dkt. #604 at pp. 3–4). Though Baribe concedes that she did send Bello money after securing the PPP loan, she claims that "Bello lied to her and told her that the money she sent him was to develop a website and grow her business" (Dkt. #604 at p. 4). Thus, Baribe argues that the evidence only could have established that Bello "took advantage of a hard-working mother with a six[th]-grade education"—not that she is a co-conspirator in this fraud scheme (Dkt. #604 at p. 4).

Ajibola's arguments track Baribe's (*Compare* Dkt. #604 at pp. 3–4, *with* Dkt. #627 at pp. 3–4). He also contends that the evidence did not establish his specific intent, nor any other element. According to Ajibola, the trial evidence showed that he owned a trucking business and that Ajibola trusted Bello, who had previously prepared Ajibola's taxes, when Bello offered to help him get a PPP loan (Dkt. #627 at p. 3). Just as Baribe argues, Ajibola maintains that the PPP loan application tied to him and his business, submitted from Bello's IP address, was the product of fraudulent documents that Ajibola was completely unaware of (Dkt. #628 at pp. 3–4).

For its part, the Government holds firm and defends the jury's verdict. The evidence at trial aligns with the Government's position. The trial record supports conviction and will not

4

tolerate a judgment of acquittal. When "viewing the evidence in the light most favorable to the verdict," the Court concludes that a rational factfinder "could have found the essential elements of the offense charged beyond a reasonable doubt." *See Boyd*, 773 F.3d at 644. As the Government points out, the trial record includes numerous text exchanges that Bello and Baribe shared related to the procurement of a PPP loan for Baribe's catering company (*See* Dkt. #631 at p. 8). And while Baribe now claims that her catering company was totally legitimate, the trial testimony showed that Baribe had neither W2 employees nor W2 payroll expenses to ground the PPP loan for which she applied (*See* Dkt. #631 at p. 8). The loan application bearing her company's name said otherwise. The jury heard evidence that Baribe did receive a PPP loan for her company, Josephine Catering Services, to the tune of $141,373 (*See* Dkt. #631 at p. 8). The jury also heard that, after receiving those funds, she deposited $42,411.90 (30% of the PPP proceeds) into a bank account bearing a company name affiliated with Bello (*See* Dkt. #631 at p. 8). Throughout trial, the Government offered a significant quantum of evidence—and particularly text messages—which suggested that Bello agreed with Defendants that he would receive a kickback of this magnitude in exchange for helping them submit the PPP application and secure a PPP loan. And after receiving forgiveness for the PPP loan, Baribe paid Bello more. The evidence at trial showed unequivocally that Baribe did not use these PPP funds for permissible business purposes as required. Thus, though Baribe argues that she did not agree to enter into any fraudulent scheme with the specific intent to further the agreement and to defraud, her conduct says otherwise. The loan application affiliated with her and her company say otherwise. The financial transactions made after procurement of PPP funds say otherwise. As does all the evidence at trial. And while Baribe continues to claim ignorance to the scheme in which the evidence showed she took part, the jury rejected those arguments in

convicting her. In light of the evidence, that decision was reasonable. Accordingly, Baribe is not entitled to a judgment of acquittal on Count I.

The same is true for Ajibola, but even more so. In the Court's view, the evidence at trial incriminated Ajibola even more than it did Baribe. As the Government points out, the evidence at trial shows that Ajibola managed a company known as Preferred Oil & Gas services, LLC ("Preferred") (Dkt. #631 at p. 6). Ajibola and Bello exchanged several text messages about obtaining a PPP loan in the name of Preferred (Dkt. #631 at p. 6). As was the case with many of the companies involved in the scheme the Government showed evidence of at trial, the trial record shows that Preferred did not have W2 employees, nor did it pay W2 payroll expenses. No less, Bello's IP address was used to submit two PPP loan applications on Preferred's behalf, each of which misrepresented Preferred's employees and payroll expenses (*See* Dkt. #631 at p. 7). The Government showed the jury evidence that Ajibola received two PPP loans for Preferred, each of which were $111,332 (*See* Dkt. #631 at p. 7). Like Baribe, immediately after receiving the proceeds, the evidence showed that Ajibola deposited $33,399.60 into an account Bello controlled, as Bello instructed Ajibola. Thus, though Ajibola maintains that no rational trier of fact could conclude that the Government proved each element of conspiracy to commit wire fraud beyond a reasonable doubt, that position is simply not grounded in reality or the evidence. His conduct, his text messages with Bello, his transactions, and the fraudulent loan applications are sufficient to sustain his conviction. Underlying all of Defendants' conduct was the testimony of co-conspirators who pleaded guilty prior to trial. That testimony—which summarized the entire scheme—certainly established that Bello is a "master manipulator" and that he took advantage of his co-conspirators. But it also corroborates the other evidence that incriminated Ajibola and Baribe. That testimony

6

showed that Ajibola and Baribe's conduct, from beginning to end, aligns with the overall scheme. That co-conspirator testimony also supported the law enforcement agent testimony the Government offered as to the financial transactions. Hence, this convergence further buttresses the jury's verdict. Because a rational trier of fact could have concluded that the Government carried its burden as to each element of conspiracy to commit wire fraud, Ajibola is not entitled to a judgment of acquittal. *See Boyd*, 773 F.3d at 644.

## II.   Conspiracy to Commit Money Laundering

Having disposed of Defendants' arguments against their conviction as to Count I, the Court turns to Count II, conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Dkt. #376 at p. 18). Defendants' arguments fair no better.

To prove conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the Government had to prove each of the following elements beyond a reasonable doubt: (1) that the defendants and at least one other person made an agreement to commit the crime of money laundering; (2) that the defendant knew the unlawful purpose of the agreement; and (3) that the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose. *United States v. Cessa*, 785 F.3d 165, 173 (5th Cir. 2015); *United States v. Meshack*, 225 F.3d 556, 573–74 (5th Cir. 2000); *United States v. Threadgill*, 172 F.3d 357, 366 (5th Cir. 1999).

Turning back to Defendants' arguments, Baribe and Ajibola once more submit that the evidence cannot sustain their convictions under § 1956(h). Not so. Defendants arguments assert generally that no element is satisfied, once again focusing on the lack of intent (Dkt. #604 at p. 5; Dkt. #627 at p. 5). As the Government points out, the trial record showed that both Defendants did in fact engage in multiple financial transactions of greater than $10,000 with fraudulently obtained PPP proceeds (*See* Dkt. #631 at p. 8). The evidence at trial also showed that those kickback

transactions to Bello were orchestrated and planned via text message. That suggests an agreement. And beyond these kickback transactions with the fraudulently obtained funds, the trial record showed that Baribe and Ajibola alike engaged in extensive personal spending with their ill-gotten gains. Certainly, when viewing the evidence in the light most favorable to the verdict, it is clear that a rational trier of fact could determine that the Government carried its burden to prove that Defendants violated § 1956(h) beyond a reasonable doubt. *See Boyd*, 773 F.3d at 644. Accordingly, neither Defendant is entitled to a judgment of acquittal on Count II, either.

## CONCLUSION

It is therefore **ORDERED** that Defendant Dumbor Josephine Baribe's Motion for Acquittal (Rule 29 F.R.C.P.) (Dkt. #604) is hereby **DENIED**. It is further Ordered that Defendant Olabode Thomas Ajibola's Motion for Acquittal (Rule 29 F.R.C.P.) (Dkt. #627) is also **DENIED**.

**IT IS SO ORDERED**.

SIGNED this 20th day of August, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE